UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| MARCO A. MICHALSKI,<br>*Plaintiff*, | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | Civil No. 3:19-cv-181 (VAB) |
| v. |  |  |
| PETER PRIVITERA,<br>*Defendant*. |  |  |

**INITIAL REVIEW ORDER**

On February 6, 2019, Marco A. Michalski ("Plaintiff"), currently incarcerated at Osborn Correctional Institution in Somers, Connecticut ("Osborn"), filed a Complaint *pro se* bringing claims under 42 U.S.C. § 1983. Compl., ECF No. 1 (Feb. 6, 2019). He attached ten exhibits to his Complaint. *Id.* at 16-59. Mr. Michalski filed a motion to proceed *in forma pauperis* on the same day, Mot. for Leave to Proceed In Forma Pauperis, ECF No. 2 (Feb. 6, 2019), which was granted on February 12, 2019, Order, ECF No. 7 (Feb. 12, 2019).

Mr. Michalski alleges that Connecticut State Marshal Peter Privitera ("Defendant"), violated his First Amendment right of access to the courts and his Fourteenth Amendment rights to due process and equal protection of the laws by improperly serving a state court complaint. Compl. ¶ 1. Mr. Michalski also asserts state law claims for negligence and forgery against Marshal Privitera. *Id.*

Following the Court's review of Mr. Michalski's claims under 28 U.S.C. § 1915A(b)(1), his federal claims are **DISMISSED** and the Court declines to exercise supplemental jurisdiction over Mr. Michalski's state law claims.

Because the Court dismisses all of his claims, any remaining pending motions are **DENIED** as moot.

## I. BACKGROUND[1]

On March 6, 2018, Mr. Michalski, then incarcerated at Cheshire Correctional Institution ("Cheshire"), allegedly submitted a summons, complaint, and application for waiver of fees to the New Haven Superior Court. Compl. ¶ 6.

On or about March 22, 2018, Mr. Michalski allegedly asked Marshal Privitera to effect service on six defendants in their individual and official capacities. *Id.* ¶ 7. Marshal Privitera allegedly became annoyed when he learned that Mr. Michalski needed him to serve the defendants in individual capacity. *Id.* ¶ 8. Marshal Privitera allegedly stated that he hated serving inmate papers because the Department of Correction made service difficult and he did not feel that he was paid what he deserved for serving the papers. *Id.* He allegedly asked Mr. Michalski the amount the court had granted in the waiver of fees. *Id.* ¶ 9. Mr. Michalski allegedly stated the amount was over $500.00. *Id.*

Upon hearing the amount, "Marshal Privitera's demeanor immediately changed," and he told Mr. Michalski to send him the papers for service. *Id.* That same day, Mr. Michalski allegedly gave Marshal Privitera all the required papers for service, including the complaint, signed summons form with a return date of April 24, 2018, and the signed waiver of over $500 in fees to his counselor to be mailed, postage pre-paid, to the defendant. *Id.* ¶ 10.

On March 29, 2018, Mr. Michalski was allegedly transferred from Cheshire to Osborn. *Id.* ¶ 11.

---

[1] All factual allegations are drawn from the Complaint, ECF No. 1 (Feb. 6, 2019).

On April 4, 2018, Mr. Michalski allegedly contacted Defendant by phone to tell him of his transfer. *Id.* ¶ 12. During the call, Marshal Privitera allegedly told Mr. Michalski that he had not received the original summons but only a photocopy, and that Mr. Michalski had not signed page 14 of the complaint. *Id.* ¶ 13. Marshal Privitera allegedly told Mr. Michalski that he had just sent all the papers back to him at Cheshire, and that he had all the service copies ready and was waiting for Mr. Michalski to return the original summons and signed page 14. *Id.*

Mr. Michalski allegedly insisted that he had sent Marshal Privitera the original summons form. *Id.* ¶ 14. Defendant allegedly disagreed because the form included two lines that Defendant believed were caused by a photocopy machine. *Id.* Mr. Michalski allegedly said that the form he had filled out was itself a copy, but the entries on the form and the signature of the state court administrator were original. *Id.* ¶ 15. Mr. Michalski allegedly said that he would send everything he had to Marshal Privitera to show what Mr. Michalski had done. *Id.* Marshal Privitera then allegedly became angry and irritated and stated that "this was why he disliked serving papers for inmates." *Id.*

Mr. Michalski also allegedly asked Marshal Privitera during this phone call whether he should send the papers back to the Superior Court to get a new Return Date. *Id.* ¶ 19. Marshal Privitera allegedly stated that "if he didn't get the papers back from [Mr. Michalski] in time, that he would just change the Return Date." *Id.*

On April 5, 2018, Mr. Michalski allegedly mailed Marshal Privitera everything he had relating to the state case. *Id.* ¶ 16.

On April 10, 2018, Mr. Michalski allegedly received the papers Marshal Privitera had returned to him. *Id.* ¶ 17. Along with the papers was allegedly a note from Marshal Privitera reporting the same deficiencies he identified during the phone call. *Id.* ¶ 18. The note also

allegedly indicated, as Marshal Privitera had allegedly done during the April 4 phone call, that if he did not receive the documents in time, he would change the return date himself. *Id.*

On April 13, 2018, Mr. Michalski allegedly made a legal call to Marshal Privitera, who allegedly reported that he was in the process of effecting service. *Id.* ¶ 20. When Mr. Michalski asked how he could do that without the signed page of the complaint, Marshal Privitera allegedly stated that he had signed Mr. Michalski's name on the page and changed the date on the summons. *Id.* Marshal Privitera allegedly assured Mr. Michalski that he had the authority to do both things and that he was making proper and effective service on the six defendants. *Id.* ¶ 21. He allegedly told Mr. Michalski to "pretend" that he had not sent back the original summons form. *Id.* When Mr. Michalski allegedly questioned Marshal Privitera about Administrative Bulletin 16-02, regarding service issues for inmates serving defendants in individual capacity, indicating that "he didn't want his case dismissed," Marshal Privitera allegedly assured Mr. Michalski that he would "take care of" Mr. Michalski. *Id.* ¶ 25.

Mr. Michalski assumed that Marshal Privitera had changed the return date on the original summons, or that he had signed Mr. Michalski's name and obtained a new summons with a new return date from the court. *Id.* ¶ 22. He also assumed that Marshal Privitera had the authority for whichever action he had taken. *Id.*

But Mr. Michalski alleges that Marshal Privitera actually used the unsigned summons that Mr. Michalski had sent him on April 5, 2018, after their phone conversation. *Id.* ¶ 23. He alleges that Marshal Privitera put a new return date on the summons, merged it with the other papers Mr. Michalski had sent, and served it on the Superior Court defendants even though he knew that the case would be dismissed for ineffective service. *Id.*

Mr. Michalski alleges that Marshal Privitera knowingly served the Superior Court defendants an unsigned summons, and also that Marshal Privitera forged Mr. Michalski's name, "so he could secure and collect the over $500 fee for service as soon as possible and not risk [Mr. Michalski] sending it back to the [Superior Court] for a new return date and possibly use a different Marshal" for service. *Id.* ¶ 27. He alleges that Marshal Privitera then filed an "Officer's Return" falsely attesting that he had served true and attested copies of the original writ, summons, and complaint. *Id.* ¶ 28.

On June 6, 2018, the Superior Court defendants filed a motion to dismiss for insufficient and defective service because the summons was not signed. *Id.* ¶ 29.

On June 10, 2018, Mr. Michalski allegedly filed a complaint against Marshal Privitera with the State of Connecticut State Marshal Commission. *Id.* ¶ 32. The following day, Marshal Privitera allegedly filed a response in which he admitted changing the date on the summons and merging the documents but denied forging Mr. Michalski's signature. *Id.* ¶ 33. On June 24, 2018, the State Marshal Commission allegedly referred the matter to an Oversight Committee for a probable cause hearing to determine whether Marshal Privitera lacked due diligence and competence in his handling of Mr. Michalski's papers, whether he improperly billed the Judicial Branch of the State of Connecticut and received a $500 fee, whether he forged Mr. Michalski's name, and whether he failed to adequately respond to the complaint and cooperate in the Commission's investigation. *Id.* ¶ 34.

### I. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks

monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy

judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

"'A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). The court must assume the truth of the allegations in a *pro se* complaint and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). However, notwithstanding this liberal interpretation, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See, e.g., Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

## II. DISCUSSION

Mr. Michalski contends that Marshal Privitera violated his First Amendment right of access to the courts and his Fourteenth Amendment rights to due process and equal protection. Compl. ¶¶ 43-45. He also asserts state law claims for negligence and forgery. *Id.* ¶¶ 37-41.

Mr. Michalski contends that Marshal Privitera violated the following state statutes and regulations: (1) Conn. Gen. Stat. § 6-32, and Connecticut Regulations §§ 6-38b-6(1), (2), (20), and §§ 6-38b-8(b)(1) by merging pages from two sets of papers and serving copies of a summons that was not signed, *id.* ¶ 37; (2) Conn. Gen. Stat. § 6-32, and Connecticut Regulations §§ 6-38b-6(1), (2), (20) by changing the return date on the summons, *id.* ¶ 38; (3) Conn. Gen. Stat. § 6-38d, and Connecticut Regulations §§ 6-38b-6(1), (2), (11), (20) by knowingly billing the Connecticut Judicial Branch and receiving $500 for defective process, *id.* ¶ 39; (4) Conn. Gen. Stat. § 53a-139 and § 53a-140, and Connecticut Regulations §§ 6-38b-6(1), (2), (11), and (20) by forging Mr. Michalski's name on page 14 of the complaint, *id.* ¶ 40; and (5) Connecticut

7

Regulations § 6-38b-6(14) by failing to adequately respond to the allegations against him and cooperate in the investigation, *id.* ¶ 41. Mr. Michalski states that his claims of negligence, denial of access to the courts, denial of due process, and denial of equal protection are based on these violations. *Id.* ¶¶ 42-45.

The Court addresses each of these claims in turn.

A.   **The First Amendment Claim**

It is well-established that individuals retain their First Amendment right of access to the courts while incarcerated. *Lewis v. Casey*, 518 U.S. 343, 346 (1996) ("[The Supreme Court in] *Bounds* acknowledged [] the (already well-established) right of access to the courts" for incarcerated individuals (citing *Bounds v. Smith*, 430 U.S. 817, 821, 828 (1977))). A prisoner's right of access to the courts "is rooted in the constitutional guarantees of equal protection of the laws and due process of law." *Bourdon v. Loughren*, 386 F.3d 88, 95 (2d Cir. 2004).

> Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong. However unsettled the basis of the constitutional right of access to courts, our cases rest on the recognition that the right is ancillary to the underlying claim without which a plaintiff cannot have suffered injury by being shut out of court.

*Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002).

To state a claim for denial of access to the courts, a plaintiff must demonstrate that he suffered an actual injury as a result of the defendant's actions. *Lewis*, 343 U.S. at 351–52. He must allege that the defendant took, or was responsible for, actions that frustrated his efforts to pursue a nonfrivolous legal claim. *Id.* at 353. The actual injury requirement "is not satisfied by just any type of frustrated legal claim." *Id.* at 354. The Supreme Court has restricted the types of claims to direct appeals of criminal convictions, habeas petitions, and "'civil rights actions—*i.e.*,

actions under 42 U.S.C. § 1983 to vindicate 'basic constitutional rights.'" *Id.* (citation omitted). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355 (emphasis in original).

Mr. Michalski argues that Marshal Privitera denied him access to the courts because his state court case was dismissed for defective process.

Mr. Michalski, however, does not describe, or submit a copy of, his state complaint. As he stated that six correctional employees were defendants, the case was not a direct appeal of Mr. Michalski's conviction or a habeas petition. The Court cannot determine whether the case was a Section 1983 action or whether the claim asserted was frivolous. Thus, Mr. Michalski has not alleged facts showing that his state case is one for which access to courts is guaranteed.

In addition, courts considering access to courts claims have held that a plaintiff alleging interference with his access to courts "must have been without the opportunity to overcome the impediment before suffering the actual injury." *Pacheco v. Zurlo*, No. 9:09-CV-1330 TJM ATB, 2011 WL 1103102, at *9 (N.D.N.Y. Feb. 8, 2011), *report and recommendation adopted*, No. 09-CV-1330, 2011 WL 1102769 (N.D.N.Y. Mar. 23, 2011) (quoting *Odom v. Baker*, 02–CV–757F, 2008 WL 281789, at *5 (W.D.N.Y. Jan. 31, 2008) (internal quotation marks omitted)); *see, e.g., Thomas v. Ryan*, 735 F. App'x 351, 352 (9th Cir. 2018) (plaintiff failed to show actual injury where action was dismissed without prejudice and plaintiff was able to refile); *McCrary v. Reed*, No. 1:15-CV-136-SNLJ, 2015 WL 5480216, at *4 (E.D. Mo. Sept. 17, 2015) (same).

Mr. Michalski alleges that his state case "will be dismissed for defective service." Compl. ¶ 31. He does not allege that it has actually been dismissed. Nor has Mr. Michalski alleged any facts showing that he was unable to effect proper service in response to the motion to dismiss or

refile the case with proper service. Thus, Mr. Michalski fails to allege facts showing that he suffered an actual injury to support a claim for denial of access to the courts.

Accordingly, Mr. Michalski's First Amendment claim must be dismissed.

### B. The Due Process Claim

To state a claim for violation of his right to procedural due process, a plaintiff must show that he was deprived of a protected liberty or property interest and that the state failed to follow constitutionally sufficient procedures when addressing the deprivation. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam) ("[S]tandard analysis under [the Due Process Clause"] proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

Mr. Michalski alleges that Defendant, "a state Marshal[,] knew the process due to the plaintiff, yet knowingly denied him this process." Compl. ¶ 44. But the Court does not know of any case finding a protected liberty or property interest in proper service of a state complaint, nor has Mr. Michalski identified one. As he lacks a protected liberty or property interest, Mr. Michalski's due process claim fails.

Accordingly, Mr. Michalski's due process claim will be dismissed.

### C. The Equal Protection Claim

The Equal Protection Clause protects prisoners from invidious discrimination. This provision does not mandate identical treatment for each individual; rather, it requires that "all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985). To state an equal protection claim, Mr. Michalski must allege facts showing that he was treated differently from similarly-situated individuals and that the

reason for the different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (internal quotation marks and citation omitted).

Mr. Michalski contends that he was denied equal protection of the laws because he believes that Marshal Privitera would not have acted this way with a "normal citizen." Compl. ¶¶ 36, 45. But incarcerated individuals are not similarly situated to unincarcerated persons. *See Nicholas v. Tucker*, 114 F.3d 17, 20 (2d Cir. 1997) ("[P]risoners are not situated similarly to non-incarcerated persons." (citing *Allen v. Cuomo*, 100 F.3d 253, 260 (2d Cir.1996)). Rather, "[t]he rights of prisoners are necessarily limited because of their incarceration," and "[a] state may treat differently situated people in a different way." *Allen*, 100 F.3d at 260 (citing cases).

Furthermore, even if an incarcerated person could be similarly situated to a non-incarcerated person, Mr. Michalski has not alleged any facts suggesting that any non-incarcerated person was or would have been treated differently. His allegations thus are conclusory and insufficient to state a plausible equal protection claim. *See Iqbal*, 556 U.S. at 678 ("mere conclusory statements[] do not suffice.").

Accordingly, Mr. Michalski's claim under the Equal Protection Clause must be dismissed.

**D. Remaining State Law Claims**

Having dismissed all of Mr. Michalski's federal claims, the Court declines to exercise supplemental jurisdiction over his state law claims, and dismisses them for lack of jurisdiction. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed

11

all claims over which it has original jurisdiction."); *see, e.g.*, *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1991) ("[I]f the federal claims are dismissed before trial . . . , the state claims should be dismissed as well.").

**ORDERS**

(1)  All federal claims are **DISMISSED** under 28 U.S.C. § 1915A(b)(1) and the Court declines to exercise supplemental jurisdiction over Mr. Michalski's state law claims under 28 U.S.C. § 1367(c)(3).

(2)  Because the Court here dismisses all of Mr. Michalski's claims, the following motions are **DENIED without prejudice** as moot: the motion to appoint counsel, ECF No. 8 (Mar. 25, 2019); the motion for order to show cause and motion for temporary restraining order, ECF No. 9 (Aug. 5, 2019); and the motion for judgment on the pleadings, ECF No. 10 (Jan. 17, 2020).

(3)  Mr. Michalski may move to reopen and file an amended complaint by **April 3, 2020**, regarding only his claim for denial of access to the courts, provided he can allege facts showing that his state court case was a section 1983 action challenging violation of constitutional rights relating to prison conditions and he was unable to refile the case with proper service.

**Failure to file an amended complaint by April 3, 2020, will result in the termination of this case.**

**SO ORDERED** at Bridgeport, Connecticut, on this 28th day of February, 2020.

/S/
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE